No. 98,949

STATE OF KANSAS, *Appellee*, v. HECTOR H. GALLEGOS, *Appellant*.

(190 P.3d 226)

Opinion filed August 1, 2008.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, argued the cause, and *Jennifer E. Conkling*, of the same office, was with him on the briefs for appellant.

*Nathan P. Eberline*, assistant solicitor general, argued the cause, and *Paul J. Morrison*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: Hector H. Gallegos was convicted of premeditated,

first-degree murder and criminal possession of a firearm. See K.S.A. 21-3401; K.S.A. 21-4204. The court imposed sentences of life imprisonment with no possibility of parole for 25 years for the murder conviction and 9 months' imprisonment for the firearm offense, to be served consecutively. He now appeals, claiming that the district court erred (1) by not instructing the jury on voluntary manslaughter as a lesser included offense of first-degree murder and (2) by providing an instruction that allegedly shifted the burden of proof to the defendant to prove his innocence. He also raises issues regarding the constitutionality of the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-4701 *et seq.*, in light of *Cunningham v. California*, 549 U.S. 270, 166 L. Ed. 2d 856, 127 S. Ct. 856 (2007), and cumulative error. We affirm.

FACTS

The underlying facts in this case are not in dispute. Gallegos was at home on the evening of June 24, 2006. Between the hours of 10 p.m. and midnight, he drank two glasses of vodka mixed with orange juice and injected three doses of cocaine into his body. He then went to sleep until about 4 a.m., when he was awakened by a phone call from his nephew, Andrew Gallegos.

Andrew had been at a party at the home of Pedro Reyes Cruz. At some point during the party, Andrew and Cruz got into an argument. Andrew left the party and called Gallegos, asking his uncle to come pick him up because Cruz and another man were "messing [with] him."

Gallegos retrieved his 9-millimeter handgun and loaded the firearm. Although he was "half-asleep" and "in a fog" from the vodka and the cocaine, he got into his car and drove toward Cruz' house; he found Andrew walking down the street nearby. Gallegos picked up his nephew and drove to Cruz' house. He then told Andrew to go to the door while he waited on the sidewalk in front of the porch.

Cruz came to the door. When Cruz saw Gallegos, the two men began arguing about the earlier confrontation between Cruz and Andrew. Cruz remained on his porch during that time, and Gallegos remained on the sidewalk roughly 7 feet away. When Cruz told Gallegos that he had been " 'messing with' " Gallegos' nephew An-

drew " '[j]ust because,' " Gallegos pulled out his gun and pointed it at Cruz' head. Cruz told Gallegos to " '[c]alm down.' " Gallegos responded by shooting him five times—three times to the head, once to the right thigh, and once to the left hip. The autopsy revealed that two of the three shots to Cruz' head were fatal wounds.

(1) LESSER INCLUDED OFFENSE INSTRUCTION ON VOLUNTARY MANSLAUGHTER

Gallegos argues that the district court erred when it failed to instruct the jury on voluntary manslaughter as a lesser included offense of first-degree murder. Gallegos concedes on appeal that he neither requested that such an instruction be given nor objected to its absence. The court *did* instruct the jury on second-degree murder as a lesser included offense of premeditated, first-degree murder.

*Standard of Review*

The procedure governing parties' proposals of jury instructions and the instructions actually provided by the court at trial is set forth in K.S.A. 22-3414(3), which provides in relevant part:

"In cases where there is some evidence which would reasonably justify a conviction of some lesser included crime as provided in subsection (2) of K.S.A. 21-3107 and amendments thereto, the judge shall instruct the jury as to the crime charged and any such lesser included crime.

"The court shall pass upon the objections to the instructions and shall either give each instruction as requested or proposed or refuse to do so, or give the requested instruction with modification. All instructions given or requested must be filed as a part of the record of the case.

. . . .

"No party may assign as error the giving or failure to give an instruction, including a lesser included crime instruction, unless the party objects thereto before the jury retires to consider its verdict stating distinctly the matter to which the party objects and the grounds of the objection unless the instruction or the failure to give an instruction is clearly erroneous."

As the language of the statute demonstrates, the inquiry as to whether an instruction should have been given on voluntary manslaughter as a lesser included offense of first-degree murder involves a three-step analysis:

(1) Is voluntary manslaughter a lesser included offense of premeditated, first-degree murder?
(2) If it is a lesser included offense, is there "some evidence" that would "reasonably justify" a conviction of voluntary manslaughter in this case? and
(3) If there was evidence in the record that would justify a voluntary manslaughter conviction, is the court's failure to provide the instruction reversible error?

The first step in this inquiry—whether one crime is a lesser included offense of another under K.S.A. 21-3107(2)—is a purely legal question over which this court has unlimited review. See *State v. Hebert*, 277 Kan. 61, 104, 82 P.3d 470 (2004).

The second question similarly involves an objective analysis as to "whether there was sufficient evidence" to support a conviction on the lesser included offense. *State v. Horn*, 278 Kan. 24, 39-42, 91 P.3d 517 (2004). This analysis requires the resolution of mixed questions of law and fact, as the objective determination as to whether a jury could reasonably convict the defendant of a lesser included offense is a legal question, the resolution of which turns on whether the facts in the current case meet this threshold. We generally review such mixed questions de novo, as we are in as good of a position as the district court to reach a conclusion based on an objective view of the facts. *Cf. State v. Fisher*, 283 Kan. 272, 286, 154 P.3d 455 (2007) (considering mixed questions of fact and law in a suppression context); *State v. Gleason*, 277 Kan. 624, 644-45, 88 P.3d 218 (2004) (discussing mixed questions in context of a claim for ineffective assistance of counsel).

Finally, our standard for considering the third question in this analysis—whether the error is sufficiently egregious to warrant reversal—depends on the procedural posture of the case before us. Where the defendant neither requests an instruction on a lesser included offense nor objects to its absence, as is the case here, we reverse only if we find that the failure to provide the instruction was clearly erroneous. See K.S.A. 22-3414(3); *State v. Carter*, 284 Kan. 312, 324, 160 P.3d 457 (2007). The failure to provide a particular instruction is clearly erroneous "only if the reviewing court is firmly convinced there is a real possibility that the jury would

have rendered a different verdict if the error had not occurred. [Citation omitted.]" *State v. Bell*, 280 Kan. 358, 365, 121 P.3d 972 (2005).

*Analysis*

We have held on numerous occasions that voluntary manslaughter is a lesser included offense of both first-and second-degree murder as a "lesser degree" of those crimes under K.S.A. 21-3107(2)(a). See *Horn*, 278 Kan. at 39; *State v. McClanahan*, 254 Kan. 104, 109, 865 P.2d 1021 (1993) (citing K.S.A. 21-3107[2][a] [Ensley 1988]). Thus, our resolution of this case turns on whether there is some evidence that would reasonably justify a conviction of voluntary manslaughter and, if so, whether the failure to provide an instruction on the lesser included offense was clearly erroneous.

K.S.A. 21-3403 defines voluntary manslaughter as "the intentional killing of a human being committed . . . (a) [u]pon a sudden quarrel or in the heat of passion; or (b) upon an unreasonable but honest belief that circumstances existed that justified deadly force" such as self-defense or the defense of others.

Gallegos argues on appeal that the facts were sufficient to warrant an instruction under K.S.A. 21-3403(a)—voluntary manslaughter that results from a sudden quarrel or the heat of passion. The key elements of this offense are (1) an intentional killing and (2) legally sufficient provocation. *State v. Mitchell*, 269 Kan. 349, 352, 7 P.3d 1135 (2000). In this case, there is no question that Gallegos intended to kill Cruz; instead, the question is whether the behavior that the defendant claims to have provoked his action—the argument outside Cruz' home and the previous altercation between Cruz and Gallegos' nephew—was sufficient to support the giving of an instruction on voluntary manslaughter.

This court has previously explained that the provocation required for this type of voluntary manslaughter "must be of such a degree as would cause an ordinary man to act on impulse without reflection. [Citations omitted.]" *State v. Guebara*, 236 Kan. 791, 796, 696 P.2d 381 (1985). In other words, the provocation for the defendant's action must be *legally sufficient* to justify an instruction on the reduced charge. See *Horn*, 278 Kan. at 40-42; *Guebara*, 236

Kan. at 796. The determination as to whether provocation is legally sufficient is an objective, not a subjective, test:

"The provocation, whether it be 'sudden quarrel' or some other form of provocation, must be sufficient to cause an ordinary man to lose control of his actions and his reason. [Citations omitted.] In applying the objective standard for measuring the sufficiency of the provocation, the standard precludes consideration of the innate peculiarities of the individual defendant. The fact that his intelligence is not high and his passion is easily aroused will not be considered in this connection. [Citation omitted.]" 236 Kan. at 796.

We have further explained that provocation will be deemed sufficient to warrant an instruction on voluntary manslaughter only if that provocation is "calculated to deprive a reasonable man of self-control and to cause him to act out of passion rather than reason. 2 Wharton's Criminal Law § 155." *Guebara*, 236 Kan. at 796.

Applying this standard to the events in this case, the evidence of an argument between Gallegos and Cruz immediately before Cruz' death fails to demonstrate any legally sufficient provocation that would warrant an instruction on voluntary manslaughter. Rather, the record demonstrates that after picking up his nephew, Gallegos went to Cruz' home and instructed his nephew to knock on the door to get Cruz outside. Although there was a brief verbal exchange between Cruz and Gallegos, Cruz remained on his porch during that time, and the defendant remained on the sidewalk roughly 7 feet away. Cruz told the defendant that he had been " 'messing with' " the defendant's nephew " '[j]ust because' "; Gallegos immediately pulled out his gun and pointed it at Cruz' head. When Cruz told Gallegos to " '[c]alm down,' " Gallegos responded by shooting him five times, including three times in the head.

The evidence does not reasonably justify a conviction for voluntary manslaughter. We conclude that the district court did not err when it instructed the jury on only second-degree murder as a lesser included offense of premeditated, first-degree murder.

(2) INSTRUCTION ON THE BURDEN OF PROOF

Gallegos argues that the district court erred by instructing the jury that it was to presume he was not guilty "until" it was convinced beyond a reasonable doubt that he was guilty. Gallegos ar-

gues that the court should have instructed that the jury was required to maintain the presumption of innocence "unless" it found the defendant guilty.

Gallegos claims that by instructing the jury that it was required to presume his innocence until it was convinced beyond a reasonable doubt that he was guilty, the court essentially shifted the burden of proof to the defendant to disprove his guilt. According to the defendant, the use of the term "until" indicated an expectancy that at some point, the jury should find the defendant guilty. The wording of the instruction therefore focused on *when*, not *if*, the defendant would be convicted.

*Standard of Review*

Gallegos acknowledges on appeal that he did not object to the language of this instruction at trial. However, he argues that because the language shifts the burden of proof to the defendant, the instruction was clearly erroneous and can only be corrected by granting a new trial. See K.S.A. 22-3414(3); *Carter*, 284 Kan. at 324. Instructions are clearly erroneous " 'only if the reviewing court is firmly convinced that there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred.' [Citations omitted.]" *State v. Trotter*, 280 Kan. 800, 805, 127 P.3d 972 (2006).

*Analysis*

At the close of the trial, the court included the following language in its instructions to the jury:

> "The State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty. You must presume that he is not guilty *until* you are convinced from the evidence that he is guilty.
>
> "The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of any of the claims required to be proved by the State, you should find the defendant guilty." (Emphasis added.)

Gallegos' argument as to this jury instruction fails for two important reasons: (1) We have previously held that the very instruction at issue, although not ideal, does not rise to the level of re-

versible error; and (2) even if the instruction was in some way erroneous, any possible error was invited by Gallegos, who proposed the exact language in question before trial.

As to the first point, we considered the exact language included in the instruction in question, which is a previous version of PIK Crim. 3d 52.02, in *State v. Wilkerson*, 278 Kan. 147, 91 P.3d 1181 (2004). In that case, the defendant claimed that the use of the term "until" rather than "unless" misled the " 'jury into believing that [it] should expect to be convinced of the defendant's guilt.' " 278 Kan. at 158. We noted that while the instruction "would have been improved by the substitution of the word 'unless' for the word 'until,' " the instructions were not the basis for reversal. 278 Kan. at 158. In particular, we emphasized that "[t]he whole of the instructions given in this case, when read together, accurately stated the law," so "[t]he jury could not reasonably have been misled by them, and thus the instructions did not constitute reversible error even if they were in some way erroneous. [Citations omitted.]" 278 Kan. at 158.

As was the case in *Wilkerson*, the instructions in this case, when taken as a whole, accurately state the law. The burden-of-proof instruction, when read in its totality, correctly describes the standard that the jury was required to apply in finding Gallegos guilty or not guilty of the crimes charged. The jury could not reasonably have been misled by the use of the term "until" in light of the accompanying instructions.

Furthermore, even if we were to find some error from the use of the instruction at issue, that error was invited by Gallegos, who proposed the use of the exact instruction in question—including the term "until"—before trial. This court has explicitly stated that "[a] litigant may not invite and lead a trial court into error and then complain of the trial court's action on appeal. [Citation omitted.]" *State v. Kirtdoll*, 281 Kan. 1138, 1150, 136 P.3d 417 (2006).

In *Kirtdoll*, this court held that the defendant was "barred from claiming" error from a cautionary instruction given by the court because the defendant had "championed the use of the instruction over the State's objection." 281 Kan. at 1150-51. In this case, Gallegos did not merely defend the use of the instruction but instead

*proposed the very instruction* that he now claims to be erroneous. Any potential prejudice that might have arisen from the use of the instruction in question is outweighed by this fact.

Finally, we note that any potential for error involving the instruction in this case could have been avoided if Gallegos had proposed the most recent version of PIK Crim. 3d 52.02. The pattern instruction was modified in 2004 after this court issued its decision in *Wilkerson* to substitute unless for until. See PIK Crim. 3d 52.02, Comment, p. 52. We have previously emphasized the desirability of using the current pattern instructions, explaining:

> "The use of pattern (PIK) instructions is not mandatory, but is strongly recommended. The pattern instructions have been developed by a knowledgeable committee to bring accuracy, clarity, and uniformity to jury instructions. They should be the starting point in the preparation of any set of jury instructions. If the particular facts in a given case require modification of the applicable pattern instruction or the addition of some instruction not included in PIK, the trial court should not hesitate to make such modification or addition. However, absent such need, PIK instructions and recommendations should be followed." *Mitchell*, 269 Kan. 349, Syl. ¶ 4.

Had the defendant or his counsel provided the current version of PIK Crim. 3d 52.02 with his proposed jury instructions, this issue would not be before the court today. Regardless of this oversight, however, the use of the outdated instruction in this case did not constitute clear error.

(3) CONSTITUTIONALITY OF THE KSGA

Gallegos claims that the sentence for his conviction of criminal possession of a firearm is unconstitutional in light of the United States Supreme Court's recent decision in *Cunningham v. California*, 549 U.S. 270, 166 L. Ed. 2d 856, 127 S. Ct. 856 (2007), because the court imposed the upper limit in the presumptive sentencing grid box based on aggravating factors that were not submitted to the jury.

Gallegos was convicted of criminal possession of a firearm under K.S.A. 21-4204(a)(3), which is a severity level 8 nonperson felony. K.S.A. 21-4204(d). Because the firearm offense was not Gallegos' primary conviction, the court determined that he had a criminal history score of I for that particular offense. Thus, under the

KSGA, Gallegos' firearm conviction carried a presumptive sentence of 7 to 9 months. K.S.A. 21-4704(a) (grid). The court sentenced the defendant to the upper limit in the sentencing grid box, imposing a 9-month prison sentence to be served consecutive to his hard 25 sentence for the murder conviction. The court explained that the reason for the upper-limit sentence was that if Gallegos had not violated the firearm statute, "perhaps [the court] would not be here today" to sentence him on the murder conviction.

Gallegos argues that under *Cunningham,* the maximum sentence that the statute authorizes for his conviction is actually the standard (middle) number in the sentencing grid box and any factors that would increase a defendant's sentence beyond that standard number must be submitted to a jury and determined beyond a reasonable doubt. Under this reasoning, Gallegos claims K.S.A. 21-4704(e)(1), which permitted the court to impose the upper limit in the sentencing grid box, is facially unconstitutional under *Cunningham* because it allows a court to impose a penalty beyond the statutory maximum.

In *State v. Johnson,* 286 Kan. 824, Syl. ¶¶ 5-6, 190 P.3d 207 (2008), the defendant raised this exact argument relating to *Cunningham* and K.S.A. 21-4704(e)(1) that is put forth by Gallegos in this case. We held in *Johnson* that because the KSGA provides district courts with discretion to impose any sentence within the presumptive range, the prescribed statutory maximum sentence under *Cunningham* is the high number in the applicable sentencing grid box. Thus, K.S.A. 21-4704(e)(1) does not violate a defendant's constitutional right to a jury trial under the Sixth and Fourteenth Amendments to the United States Constitution. For the reasons set forth in *Johnson,* we hold that Gallegos' claim regarding the constitutionality of the KSGA is similarly without merit.

### (4) Cumulative Error

Gallegos argues that even if the issues he has raised do not individually rise to the level of reversible error, the cumulation of those alleged errors denied him the right to a fair trial. The test to determine whether cumulative errors require reversal of a defend-

ant's conviction is "whether the totality of circumstances substantially prejudiced the defendant and denied him a fair trial." *State v. Ackward*, 281 Kan. 2, 29, 128 P.3d 382 (2006).

Our opinion demonstrates that Gallegos has failed to establish that any error or prejudice occurred at the trial level. Under such circumstances, his claim of cumulative error is without merit. See *State v. Humphery*, 267 Kan. 45, 64, 978 P.2d 264 (1999).

Affirmed.