No. 106,456

STATE OF KANSAS, *Appellee*, v. TERRY RAY HAYES, *Appellant*.

(322 P.3d 414)

Opinion filed June 13, 2014.

*Lydia Krebs*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Steven J. Obermeier*, assistant district attorney, argued the cause, and *Jacob M. Gontesky*, assistant district attorney, *Stephen M. Howe*, district attorney, *Kristafer R. Ailslieger*, deputy solicitor general, and *Derek Schmidt*, attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

ROSEN, J.: Terry Ray Hayes appeals from his convictions and sentences for premeditated first-degree murder and aggravated assault. He challenges the denial of his request for a voluntary manslaughter instruction and the district court's imposition of a hard 50 life sentence.

Hayes was married to Tiffani Hayes for a little over a year. In April 2010, Tiffani moved back home with her mother. Shortly afterwards, Hayes filed for a divorce. He experienced depression and suicidal ideations following the breakup. At one time, in the course of speaking with Tiffani, he pulled out a gun, pointed it at her head, pulled the trigger, and then pointed it at his own head and pulled the trigger. The gun did not fire.

Hayes and Tiffani engaged in a lengthy series of text and e-mail exchanges. A common topic was the custody of her pets, which were in Hayes' possession. Hayes pleaded with Tiffani to love him and to return to him. He also accused her of infidelity and expressed his hope that she would suffer for what she had done. Tiffani asked Hayes to stop initiating electronic contact with her at her place of work.

On August 4, 2010, Tiffani accompanied her mother and her aunt to dinner. Hayes sent Tiffani several text messages and offered to meet her and return her pets that he had in his possession and that she wanted back. The two agreed to meet at a convenience store in Olathe. Tiffani and the two other women drove to the store parking lot and waited for Hayes to show up.

When Hayes arrived, he removed the animals from his vehicle and placed them in the backseat of Tiffani's truck. While he was doing this, the three women stood outside the truck. Hayes spoke loudly to Tiffani and cut and pulled wiring from her truck. The women then drove away.

While Hayes was delivering the pets, two of his children were being cared for by a sitter. One of Hayes' sons and a friend of the son asked the sitter if they could speak with her privately. They told her that earlier that day Hayes had informed them he was going to shoot or kill Tiffani. Later that evening, Hayes assured the

sitter's father that he did not really intend to kill Tiffani; he had been upset and it was just an empty threat.

The next morning, Tiffani called her mother and reported that Hayes had called her, telling her that she would have to go to his residence and pick up a box containing property belonging to her by 1 p.m. or he was going to throw it all away. Tiffani's mother told Tiffani that it would probably be okay to pick up the items if a friend and coworker, Ted Ennis, accompanied her. Tiffani then called Ennis and asked him to take her to pick up the box.

Shortly before noon, Ennis drove Tiffani and another coworker to Hayes' residence. On the way, Tiffani engaged in texting, and, at one point, she laughed and reported that Hayes had texted her telling them to "keep on driving" because she was not coming by herself. They nevertheless proceeded to Hayes' residence. When they arrived, he was "stomping" around the driveway, gesturing for them to keep on going. No box containing her property was visible.

Tiffani rolled down her window and told Hayes to return her property. She then got out of the truck and approached him. Ennis was going to get out of the truck but decided not to because it appeared to him there was going to be a confrontation between Tiffani and Hayes. He then heard Tiffani scream, "Ted!" and he turned and saw her running toward the truck. He saw Hayes running behind her holding a handgun. Just as Tiffani reached the still-open door of the truck, Hayes put the gun behind her head and fired from a distance of less than a foot. Tiffani landed on the pavement face-up, and Ennis heard Hayes say, "How do you like that?" or "Take that."

Hayes then turned his arm and pointed the gun toward Ennis. Thinking that he was in danger of being shot, Ennis accelerated the truck away from the scene and, after putting some distance between himself and Hayes, called 911.

The State filed a complaint charging Hayes with one count of premeditated first-degree murder and one count of aggravated assault. A jury found him guilty of both counts. The district court sentenced him to a hard 50 life sentence for the murder conviction and a consecutive term of 13 months for the aggravated assault conviction. Hayes filed a timely appeal.

Hayes initially challenges the decision by the district court to deny his request for an instruction to the jury on voluntary manslaughter. The district court decided that the facts did not support a voluntary manslaughter instruction. The court instead instructed under theories of premeditated first-degree murder and second-degree murder. The jury elected to find Hayes guilty of premeditated first-degree murder.

When analyzing a properly preserved jury instruction issue on appeal, this court follows a progressive step analysis:

"For jury instruction issues, the progression of analysis and corresponding standards of review on appeal are: (1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012)." *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 (2012).

Intentional second-degree murder is a lesser included offense of first-degree murder. *State v. Foster*, 290 Kan. 696, 711, 233 P.3d 265 (2010). Voluntary manslaughter is a lesser included offense of first-degree murder and second-degree murder. *State v. Qualls*, 297 Kan. 61, 69, 298 P.3d 311 (2013); *Foster*, 290 Kan. at 711.

The key elements of voluntary manslaughter under K.S.A. 21-3403 are an intentional killing and legally sufficient provocation. *State v. Gallegos*, 286 Kan. 869, 874, 190 P.3d 226 (2008). When reviewing whether provocation was legally sufficient, an objective test is used. 286 Kan. at 875. "Heat of passion" has been defined as "any intense or vehement emotional excitement of the kind prompting violent and aggressive action, such as rage, anger, hatred, furious resentment, fright, or terror," based "on impulse without reflection." *State v. Guebara*, 236 Kan. 791, 796, 696 P.2d 381 (1985). The provocation " 'must be sufficient to cause an ordinary man to lose control of his actions and his reason.' " *Gallegos*, 286

Kan. at 875 (quoting *Guebara*, 236 Kan. at 796); accord *State v. Vasquez*, 287 Kan. 40, 54-55, 194 P.3d 563 (2008).

In *Foster*, this court considered whether a voluntary manslaughter instruction was required in a first-degree murder jury trial. The court concluded:

"The evidence of premeditated first-degree murder and the jury's resulting conviction show Foster planned [the victim's] murder. [Witness] testimony indicates the calculated and lengthy manner in which Foster implemented his attack and eliminates the possibility Foster was provoked into killing [the victim] in the heat of passion. The evidence demonstrates a preplanned and prolonged attack on [the victim], which led to Foster's first-degree murder conviction. We find no evidence to support giving the jury a voluntary manslaughter instruction." 290 Kan. at 712.

This court does not speculate about hypothetical scenarios relating to instructing a jury on the elements of a heat-of-passion killing. *State v. Wade*, 295 Kan. 916, 925, 287 P.3d 237 (2012). The court has required that in order for a lesser included offense to be factually appropriate, "there must be actual evidence in the record, together with reasonable inferences to be drawn from that actual evidence, that would reasonably support a conviction for the lesser crime." 295 Kan. at 926. In the present case, there was no actual evidence introduced that Hayes was acting with a sudden emotional reaction to a situation.

In *Wade*, the defendant armed himself with a handgun before going to the residence of a former romantic partner, climbing through a window, and shooting her. This court held that a heat-of-passion instruction was not called for. First, the confrontation between the defendant and the victim was foreseeable, and a sudden quarrel requires "an 'unforeseen angry altercation, dispute, taunt, or accusation.' " 295 Kan. at 925 (quoting *State v. Johnson*, 290 Kan. 1038, 1048, 236 P.3d 517 [2010]). Second, the defendant's calculated conduct belied his claim of action taken "upon impulse without reflection," and therefore did not support a heat-of-passion instruction. 295 Kan. at 925. Third, the defendant's anger may have provided a motive for him to kill the victim, but it did not provide sufficient provocation for the shooting to be the result of heat of passion: "A slow burn is not heat of passion." 295 Kan. at 926.

This court has held that in order to reduce a homicide from murder to voluntary manslaughter, there must be an adequate provocation that deprives a reasonable person of self-control and causes that person to act out of passion rather than reason. Mere words or gestures, however offensive, do not constitute legally sufficient provocation for a finding of voluntary manslaughter. *Vasquez*, 287 Kan. at 55; *Guebara*, 236 Kan. at 797.

Hayes did not present evidence that he acted in the heat of passion, and the evidence was compelling that the crime was premeditated and that a confrontation between Hayes and Tiffani was either intended or foreseeable. Any provocation in the form of the breakup between Tiffani and Hayes occurred long before the shooting and could not have served as the event bringing about an impulsive action carried out without reflection. Any provocation on the day of the shooting consisted at most of words or gestures, which are insufficient grounds for instructing on voluntary manslaughter.

We need not decide whether the so-called "skip rule" applies in the present case, as the State urges. We note that the skip rule is not amenable to mechanical application and that it should be viewed as simply providing a route to finding harmless error in those cases in which the elements of the crime of conviction, as compared to a rejected lesser included offense, necessarily show that the jury would have rejected or eliminated a still lesser included offense. *State v. Simmons*, 295 Kan. 171, Syl. ¶ 5, 283 P.3d 212 (2012). We decline to decide whether those circumstances exist here.

Hayes next argues that the procedure used to impose his sentence violated his constitutional right to a trial by jury.

Applying K.S.A. 21-4635 *et seq.*, the district court found Hayes committed the murder in an especially heinous, atrocious, or cruel manner; found that no mitigating factors outweighed the aggravating circumstance; and imposed a sentence of life without the possibility of parole for 50 years (hard 50). Hayes challenged, both before the district court and before this court, the constitutionality of the judicial determination of aggravating factors.

In making its finding that the crime was especially heinous, atrocious, or cruel, the district judge declared:

"It is my finding in this case that the crime resulting in the death of Ms. Hayes was especially heinous, atrocious, and cruel. . . . The episode where you put the gun to her head and it didn't go off, and you put the gun to your head, and it doesn't go off, clearly the message is this is going to be murder-suicide if this relationship ends. And so that's the frame of reference that she was living in at that time.

". . . This case is all about anguish. Ms. Hayes was in particular anguished about this situation with you, such that she did not want to be alone with you. On the fatal day of August the 5th, she came over to the house with two men with her because she did not want to be alone with you. She was fearful of you. She did have anguish.

"The stream of e-mails that were presented in the trial of this case and today show that you taunted her. You made her life really quite miserable. She was extremely stressed about your behavior, not knowing what you were going to do.

"The situation came on August the 5th. This was an ambush. You ambushed Tiffani Hayes. . . . This was well-planned and calculated. You did not want her coworkers to be there. You wanted her to get rid of those and to come over. All you had to do was put out her box of property on the curb and stay inside the house. You wanted her to come because you had plans to kill this woman. This was well-designed and thought-out.

"And on the fateful day, she got out, she was horrified. She saw you take that gun out. She turned and ran back to the car to escape for her life, and you chased her down, put a gun to the back of her head, and shot her dead. Certainly not accidental. Certainly on purpose.

". . . This was an execution of Ms. Hayes, and that's what you accomplished in this case.

" So I do adopt by reference the factual statements made by the State in their responsive pleading. . . . I think those were fully demonstrated by evidence in the case.

"Considering the aggravating factors, and there are a number of them here, the taunting, the stalking, the torment here of Ms. Hayes ahead of time such that she was scared for her life, far outweigh any mitigating factors."

In *State v. Soto*, 299 Kan. 102, 120-24, 322 P.3d 334 (2014), this court analyzed the Kansas hard 50 sentencing statute in light of *Alleyne v. United States*, 570 U.S. ___, 133 S. Ct. 2151, 2162-63, 186 L. Ed. 2d 314 (2013). In *Alleyne*, the United States Supreme Court held that the right to a jury trial under the Sixth Amendment to the United States Constitution requires that any fact increasing a mandatory minimum sentence increases the penalty for a crime

and is therefore an element of the crime that must be proved to a jury beyond a reasonable doubt. 133 S. Ct. at 2158.

In *Soto*, this court applied the *Alleyne* reasoning to the Kansas statutory sentencing scheme and determined that the process that allows a judge to find the existence of one or more aggravating factors, instead of requiring a jury to find those factors beyond a reasonable doubt, violates the Sixth Amendment. *Soto*, 299 Kan. at 124. In the present case, it is evident that the district court made explicit factual findings that subjected Hayes to an enhanced sentence. This was constitutional error.

And, as in *Soto*, the circumstances of the present case do not lend themselves to a harmless error analysis. The issue of whether the crime was committed in an especially heinous, atrocious, or cruel manner was not uncontroverted and was not supported by such overwhelming evidence that we can declare beyond a reasonable doubt that a jury would have found beyond a reasonable doubt the existence of the aggravating factor. Further, Hayes presented several mitigating factors to the court, including his lack of significant criminal history, the extreme mental or emotional disturbances that he was undergoing at the time of the shooting, and his overall positive conduct as a parent, neighbor, and marital partner to his first wife. Thus, we could not conclude beyond a reasonable doubt that no rational jury would have determined these mitigating circumstances outweighed the aggravating circumstance.

Following *Soto*, we conclude Hayes' sentence was imposed in violation of his Sixth Amendment right to a jury trial. We accordingly vacate the hard 50 sentence and remand the case for resentencing.

Hayes raises the additional argument on appeal that the State failed to present to the district court sufficient evidence of aggravating factors. The district court heard evidence that Hayes had threatened Tiffani in the past, that he lured her to his residence in order to kill her, and that he killed Tiffani as she tried to run away from him. Viewing this evidence in the light most favorable to the prosecution, we conclude that a rational factfinder could have found beyond a reasonable doubt that Hayes committed the murder in an especially heinous, atrocious, or cruel manner. We there-

fore limit our basis for vacating Hayes' hard 50 sentence to the *Alleyne* violation of the constitutional right to a jury trial. See *Soto*, 299 Kan. at 123-24.

Hayes also argues that the district court lacked the constitutional authority to impose the aggravated grid-box sentence for aggravated assault without submitting the aggravating factors to a jury. This court has previously rejected this argument, and we decline to depart from our precedents here. See, *e.g.*, *State v. Beaman*, 295 Kan. 853, 870-71, 286 P.3d 876 (2012) (imposition of aggravated sentence in grid box without factors proved beyond reasonable doubt to jury not constitutional violation); *State v. Johnson*, 286 Kan. 824, 851, 190 P.3d 207 (2008) (same).

Convictions affirmed, hard 50 sentence vacated, and remanded for resentencing.