NOT DESIGNATED FOR PUBLICATION

No. 114,176

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MATT WIMBERLY,
*Appellant*.


MEMORANDUM OPINION


Appeal from Sedgwick District Court; JEFFREY E. GOERING, judge. Opinion filed July 14, 2017. Affirmed.


*Sarah Ellen Johnson*, of Capital Appellate Defender Office, for appellant.


*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., STANDRIDGE and SCHROEDER, JJ.


*Per Curiam*: Matt Wimberly appeals his jury trial conviction for attempted first-degree murder. He now alleges (1) the district court erred by not giving his requested jury instructions on the lesser included offense of attempted voluntary manslaughter, and (2) there was insufficient evidence to support his conviction for attempted first-degree murder. Our review of the record reflects Wimberly presented no evidence of provocation or heat of passion to support the requested lesser included instruction of attempted voluntary manslaughter. We also find, given the extensive evidence in the

1

record, there was sufficient evidence to support Wimberly's conviction for attempted first-degree murder. We affirm.

FACTS

Around 2 a.m. on September 22, 2013, Wimberly returned from work to the house he shared with Jon Mark Herrscher and Justin Malter. He sat in the front room with his roommates and Herrscher's friend, Andrew Langston. Langston offered Wimberly an acid tab, which Wimberly purchased and ingested. Wimberly and Langston left the house shortly thereafter, and Malter and Herrscher went to sleep.

Approximately 1 hour later, Herrscher was awakened by Wimberly screaming and banging on the doors and windows. Wimberly entered the house behaving strangely. He told Herrscher and Malter he found Jesus and wanted them to come with him to see Jesus. Roughly 15 minutes later, Langston returned to the house and entered the room. Wimberly looked at Langston, became upset, pulled out a knife, and told his roommates he was going to stab and kill Langston. Herrscher took the knife from Wimberly and put it on the nightstand. Wimberly calmed down.

Langston left the room to leave the house. Wimberly again became upset, grabbed the knife, chased Langston, and stabbed Langston multiple times in the head and neck until the knife got stuck in Langston's skull. Despite repeated requests from his roommates, Wimberly refused to stop. In an attempt to stop the attack, Herrscher struck Wimberly with a baseball bat several times with no effect. One of the blows to Wimberly's arm caused the knife to snap, leaving the blade in Langston's skull. Nevertheless, Wimberly continued stabbing Langston with the knife handle. Wimberly then wrapped his arm around Langston's neck, putting him in a chokehold.

Herrscher called 911. Wichita Police Officer Robert Adams arrived and observed Wimberly on the floor with his arm around Langston's neck. Wimberly did not respond to Officer Adams' commands to release Langston. Officer Adams tased Wimberly four times with no compliance. He then used multiple body blows to no avail. Several other officers arrived and were finally able to pull the men apart. Langston survived the attack but suffered severe injuries.

Wimberly was charged with attempted first-degree murder and an alternative charge of aggravated battery. At trial, the district court instructed the jury on attempted first-degree murder and a lesser included offense of attempted second-degree murder. Wimberly requested an instruction on attempted voluntary manslaughter as a lesser included offense. The district court denied his request, finding no reasonable provocation to support the instruction. It instructed the jury it could consider whether Wimberly's voluntary intoxication impaired his mental faculties to the extent he was incapable of forming the necessary premeditation or intent to kill.

The jury convicted Wimberly of both charges; however, the district court dismissed the aggravated battery charge. The district court sentenced Wimberly to 184 months' imprisonment.

ANALYSIS

On appeal, Wimberly argues two issues:  First, the district court erred in failing to give a jury instruction on attempted voluntary manslaughter as a lesser included offense; second, he argues the evidence was insufficient to support his conviction.

*No Provocation or Heat of Passion*

When a party challenges the failure to give a lesser included offense instruction, an appellate court applies a three-step framework to determine: (1) whether the appellate court lacks jurisdiction to consider the issue or the party failed to preserve the issue; (2) the merits of the claim as to whether an error occurred during the trial; and (3) whether the error was harmless or requires reversal. *State v. Dupree*, 304 Kan. 377, 391-92, 373 P.3d 811 (2016).

Wimberly timely preserved the issue. At the jury instruction conference, Wimberly requested the district court give the jury an instruction on attempted voluntary manslaughter; accordingly, this court will consider the merits of his claim.

"Our evaluation of the merits of this claim is a two-step process. First we must determine whether the requested jury instruction was legally appropriate. *State v. Plummer*, 295 Kan. 156, 161, 283 P.3d 202 (2012). Under this step, appellate review is unlimited. 295 Kan. at 161. If we determine that the requested instruction was legally appropriate, we must then determine whether the instruction was factually appropriate. 295 Kan. at 161. 'Such an inquiry is closely akin to the sufficiency of the evidence review.' 295 Kan. at 162. '[W]here the defendant has requested the lesser included offense instruction, the evidence should be viewed in the light most favorable to the defendant.' 295 Kan. at 162. 'If an instruction is legally appropriate and factually supported, a district court errs in refusing to grant a party's request to give the instruction.' 295 Kan. at 162." *State v. Barrett*, No. 113,767, 2016 WL 4262478, at *11 (Kan. App. 2016) (unpublished opinion), *petition for rev. filed* September 7, 2016.

We acknowledge voluntary manslaughter is a lesser included offense of first-degree murder. *State v. Gallegos*, 286 Kan. 869, 874, 190 P.3d 226 (2008). Therefore, the requested instruction is legally appropriate. With that step answered, we move to the second step and consider whether the instruction is factually appropriate.

4

The trial court has the duty to properly instruct the jury. That duty includes instructing the jury on lesser included offenses where there is some evidence that would reasonably justify a conviction of the lesser included offense. See K.S.A. 2016 Supp. 22-3414(3). This duty to instruct applies even if the evidence is weak, inconclusive, and consists solely of the defendant's testimony. *State v. Maestas*, 298 Kan. 765, Syl. ¶ 6, 316 P.3d 724 (2014).

"Voluntary manslaughter is knowingly killing a human being committed . . . [u]pon a sudden quarrel or in the heat of passion." K.S.A. 2016 Supp. 21-5404(a)(1).

"Kansas considers sudden quarrel as one form of heat of passion. *State v. Johnson*, 290 Kan. 1038, 1048, 236 P.3d 517 (2010). Heat of passion is defined as '"any intense or vehement emotional excitement of the kind prompting violent and aggressive action, such as rage, anger, hatred, furious resentment, fright, or terror," based "on impulse without reflection."' *State v. Hayes*, 299 Kan. 861, 864, 327 P.3d 414 (2014) (quoting *State v. Guebara*, 236 Kan. 791, 796, 696 P.2d 381 [1985])." *State v. Johnson*, 304 Kan. 924, 932, 376 P.3d 70 (2016).

"[I]n order to reduce a homicide from murder to voluntary manslaughter, there must be an adequate provocation that deprives a reasonable person of self-control and causes that person to act out of passion rather than reason." *State v. Hayes*, 299 Kan. 861, 866, 327 P.3d 414 (2014). Wimberly argues he was sufficiently provoked because of the reaction he had to the acid. He asserts the drug "affected him in a profound and disturbing way," making him "feel claustrophobic and paranoid," and causing him to "talk crazy."

The State argues Wimberly's reaction to the drug was not objectively reasonable provocation; rather, it "merely establishe[d] his subjective state of mind." The State asserts "[t]here is no indication that reasonable persons would have responded in the same or similar fashion." Indeed, the record only reflects Wimberly's reaction to the drug. There is no evidence regarding anyone else's consumption of the drug or reaction thereto.

According to Malter, "it was a new type of acid," but there is no indication it was of unusual strength. Whether an objectively reasonable person would have reacted the same as Wimberly is unknown and questionable at best.

Further, Wimberly attacked Langston more than 1 hour after taking the acid. In the interim, he left the house, came back, spoke with his roommates, pulled a knife out of his pocket, and threatened to stab and kill Langston. He spoke with his roommates for 10 to 15 minutes before Langston returned to the house and entered the room. The evidence reflects Langston did not say or do anything to provoke Wimberly. Initially, Herrscher took the knife away from Wimberly and he appeared to calm down. Then Langston left the room. As Langston left the room, Wimberly got up, grabbed the knife, chased Langston, and began stabbing him.

Wimberly's actions were not based on impulse without reflection. He clearly and unequivocally declared an intent to stab and kill Langston prior to the attack. The provocation he complains of—his unexpected reaction to the drug—occurred prior to the attack when Langston was not even in the house. There is no evidence Langston tricked Wimberly into having an unwanted reaction or otherwise did anything constituting reasonable provocation. Wimberly had a significant amount of time to contemplate his actions and cool off prior to attacking Langston, and even appeared to calm down after Herrscher took the knife away the first time. Because the attack was not based upon sudden quarrel or heat of passion, a voluntary manslaughter instruction was not factually appropriate. The district court did not err in denying Wimberly's requested lesser included instruction on attempted voluntary manslaughter. See *Johnson*, 304 Kan. at 936.

We also note the jury was instructed on the primary charge of attempted first-degree murder and the lesser included instruction of attempted second-degree murder. It is clear the jury declined to convict on the lesser included crime of attempted second-degree murder. Thus, the "skip rule" becomes relevant. Under

6

the skip rule, when a lesser included offense is given, and the jury convicts on the greater offense, any error resulting from the failure to give an instruction on a lesser included offense of the lesser included offense is cured. See *State v. Carter*, 305 Kan. 139, 163, 380 P.3d 189 (2016).

Here, Wimberly's jury convicted him of attempted first-degree murder and, therefore, never reached attempted second-degree murder. If the jury never reached attempted second-degree murder, it would not have reached attempted voluntary manslaughter, as a lesser included offense of second-degree murder. Thus, the error was cured.

*The Evidence Was Sufficient*

"'When the sufficiency of the evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. [Citation omitted.]'" *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016). "In making a sufficiency determination, the appellate court does not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility. [Citations omitted.]" *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016).

To convict Wimberly of attempted first-degree murder, the State was required to prove he had the specific intent to kill another human being, intentionally and with premeditation. See K.S.A. 2016 Supp. 21-5301(a) (defining attempt as "any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime"); K.S.A. 2016 Supp. 21-5402(a)(1) (defining murder in the first degree); *State v. Maggard*, 26 Kan. App. 2d 888, 890, 995 P.2d 916 (2000) (attempt crimes require specific intent to commit the crime attempted).

7

Wimberly argues he was under the influence of drugs to the point he could not form the specific intent to kill. This issue was considered as the district court instructed the jury: "Voluntary intoxication may be a defense to the charge of attempted murder in the first degree when such intoxication impaired the defendant's mental faculties to the extent that he was incapable of forming the necessary premeditation or intent to kill." Accordingly, this court presumes the jury properly considered and rejected Wimberly's voluntary intoxication argument. See *State v. Seba*, 305 Kan. 185, 204, 380 P.3d 209 (2016) (presumption jury rejected voluntary intoxication defense after being instructed by district court).

As previously noted, Wimberly clearly declared an intent to stab and kill Langston prior to the attack and had adequate time to cool off and contemplate his actions. He pulled out a knife, had it taken away, and picked it up before chasing Langston and repeatedly stabbing him. Even after the knife broke, Wimberly continued stabbing at Langston with the handle. He then put Langston in a chokehold and did not let go until several police officers forcefully removed him. Based upon Wimberly's statements, the timing and manner of the attack, the weapon used, the wounds inflicted, and the continuation of the attack after the knife broke, a reasonable jury could find Wimberly specifically intended to kill Langston, intentionally and with premeditation. See *State v. Cravatt*, 267 Kan. 314, Syl. ¶ 4, 979 P.2d 679 (1999) (discussing circumstances from which premeditation can be inferred). When viewed in a light most favorable to the State, the evidence was more than sufficient to support Wimberly's conviction.

Affirmed.