(251 P.3d 102)
No. 101,684

STATE OF KANSAS, *Appellee*, v. DOUGLAS S. PLUMMER, *Appellant*.

Opinion filed April 15, 2011.

*Michelle Davis*, of Kansas Appellate Defender Office, for appellant.

*Thomas R. Stanton*, deputy district attorney, *Keith E. Schroeder*, district attorney, and *Steve Six*, attorney general, for appellee.

Before McAnany, P.J., Leben and Atcheson, JJ.

Atcheson, J.: Defendant Douglas Plummer challenges his conviction for aggravated robbery in what began as an audacious shoplifting spree at a Hutchinson Target store and ended in a slugfest with company employees. Because of instructional errors on lesser included offenses, we reverse the verdict of the Reno County jury—jurors materially misinformed on the law generally have a tough time getting to a legally sustainable conclusion. We cannot tell whether the jurors here would have come to another result had they received sufficient instructions, but they certainly might have evaluated the facts differently. Defendant Plummer, therefore, gets a new trial.

## I.

The significant facts can be laid out succinctly. On March 24, 2008, Plummer entered the Target store and almost immediately attracted the attention of security personnel because of his furtive conduct. He seemed fidgety, and he closely watched other people in his vicinity as if trying to spot loss-prevention agents. Over the next 2 hours or so, Plummer navigated throughout the store under the observation of a couple of the agents and the store's security cameras. Initially, Plummer picked up a pair of sunglasses and put them in his pocket. Later he filched a backpack, removed the paper

packaging from inside, and began to fill it with other Target merchandise. Plummer took a Target knife to cut the packaging from a shaver that he put in the backpack. The duration of Plummer's enterprise and his use of Target's own property—the backpack and the knife—to facilitate the crime seem noteworthy for their brazenness.

Plummer finally pushed a shopping cart with the backpack toward the store exit. He grabbed the backpack and moved past the checkout registers without stopping. As Plummer entered a set of double doors leading outside, Target security officer Tony Schwabuer accosted him. Schwabuer grabbed Plummer's arm and told him to stop. In an effort to break Schwabuer's hold, Plummer punched the agent in the shoulder. The set-to was on. Another security agent and several other Target employees joined the effort to detain Plummer. Somebody called the police.

Plummer continued to physically struggle until the first police officers rolled up about 2 minutes later. By then the scrum had migrated from between the double doors to an area just outside both doors. Several participants, including Plummer and Schwabuer, emerged with cuts, bruises, and torn clothing. After restoring order, the police searched Plummer. The police inventoried just over $300 worth of Target merchandise recovered from his pockets and the backpack.

The Reno County District Attorney charged Plummer with a single count of aggravated robbery. The case was tried to a jury on July 22 and 23, 2008. Various police officers and Target employees testified to the events they saw. Plummer chose not to recount his version for the jury. Plummer requested that the trial court instruct the jury on theft and robbery as lesser offenses. He also asked that the court instruct the jury on the legal distinction between theft followed by a use of force to retain possession of the purloined property, on the one hand, and robbery in its various degrees, on the other. After hearing argument of counsel and weighing the matter overnight, the district judge declined to give an instruction on theft. Accordingly, the judge also determined any instruction on the legal difference between theft and robbery to be superfluous. The judge did instruct the jury on robbery as a lesser included

offense. The jury convicted Plummer of aggravated robbery. The trial court sentenced him in due course, and he has timely appealed.

## II.

We generally address the issues as the parties have framed them. Plummer principally rests his appeal on the failure of the trial court to instruct on theft, attempted aggravated robbery, and legal distinctions between robbery and theft coupled with a later use of force. He also suggests, alternatively we suppose, that this court reverse with directions that the trial judge enter a judgment of conviction for attempted aggravated robbery. Finally, Plummer raises an issue regarding use of his past convictions at sentencing. We consider the last two issues moot in light of our decision to reverse his conviction and remand for a new trial.

When a criminal defendant has requested a jury instruction that the trial court declines to give, we review that failure as a question of law. *State v. Gallegos*, 286 Kan. 869, 873, 190 P.3d 226 (2008); *State v. Simmons*, 45 Kan. App. 2d 491, Syl. ¶ 5, 249 P.3d 15, filed March 4, 2011. That is, we give no deference to the trial court's decision. 45 Kan. App. 2d 491, Syl. ¶ 5. A trial court has an obligation to instruct on any lesser included offenses supported in the evidence and must review that evidence in a light most favorable to the defendant for that purpose. K.S.A. 22-3414(3); *State v. Simmons*, 282 Kan. 728, 741-42, 148 P.3d 525 (2006). An instruction should be given even if the evidence supporting that lesser offense is "weak or inconclusive." *State v. Nelson*, 291 Kan. 475, Syl. ¶ 1, 243 P.3d 343 (2010). We ask whether the evidence would allow a reasonable jury to find the defendant guilty of the lesser offense for which no instruction had been given. *State v. Hendrix*, 289 Kan. 859, 861, 218 P.3d 40 (2009). If a jury might do so, even though that outcome seems unlikely or remote, the trial court's failure to give the instruction creates reversible error. *State v. Hutcherson*, 25 Kan. App. 2d 501, 505, 968 P.2d 1109 (1998).

## III.

The parties presume that theft is a lesser offense of aggravated

robbery for purposes of instructing a jury. The State argues that the particular facts of this case fail to warrant an instruction on theft. Historically, the Kansas appellate courts have considered theft to be a lesser degree of the offense defined by the various forms of robbery because both crimes are rooted in a person taking property in one way or another that doesn't belong to him or her. *State v. Long*, 234 Kan. 580, 591-92, 675 P.2d 832 (1984) ("[T]heft is a 'lesser degree of the same crime' which embraces robbery."). The two offenses share a lineage to the common-law crime of larceny. 234 Kan. at 590. Robbery entails the perpetrator's use of force or other coercive action to obtain the property from the victim. 234 Kan. at 592. In contrast to the robber, a thief gains control of the property without physically intimidating the victim to do so. See 234 Kan. at 592 (The victim need not be present during a theft and may be separated from his or her property through the criminal's stealth alone.). But because of their common objective and shared legal antecedents, the crimes have been considered sufficiently kindred that theft should be treated as a lesser degree of the offense of robbery. 234 Kan. at 592 ("The unlawful taking of the property of another is the gravamen of both offenses."). Both *Long*, 234 Kan. at 585-92, and *State v. Aldershof*, 220 Kan. 798, 800-04, 556 P.2d 371 (1976), contain detailed discussions of the historical relationship between theft and robbery as cognate offenses. Although that discussion need not be recited at greater length here, the inquisitive reader will find each to be a trove of information and authority on the matter.

Despite some differences in the strict elements of theft and robbery, the appellate courts continue to treat theft as a lesser offense for purposes of instructing juries. *Simmons*, 282 Kan. at 742; *State v. Boyd*, 281 Kan. 70, 94, 127 P.3d 998 (2006) (Theft entails a lesser degree of the generic crime of larceny, while robbery presents an enhanced form of the crime.). That determination squares with K.S.A. 21-3107(2)(a), which provides that a defendant may be convicted of the crime charged or a lesser degree of the same crime. Consistent with that authority, neither party argued otherwise here and, we believe, correctly so. In the interest of completeness, we note that some means of committing theft are not

treated as lesser offenses of robbery. *State v. Sandifer*, 270 Kan. 591, 600, 17 P.3d 921 (2001). Here, however, we are concerned with theft based on a culprit's obtaining or exerting unauthorized control over property—a means recognized as a lesser offense. 270 Kan. at 600-01 (cases cited).

The crimes of theft, on the one hand, and robbery and aggravated robbery, on the other, share several characteristics that are significant in this case. First, each crime requires the taking or controlling of property. 234 Kan. at 585 (In discussing theft and robbery, the court observes: "The defendant takes possession of the property of another when he exercises dominion and control over [it]."). As we have noted, that is the ultimate purpose of each. Theft requires "[o]btaining or exerting unauthorized control over property" of another person. K.S.A. 21-3701.

For robbery, the offender must accomplish a "taking" of property from a person or in a person's presence "by force or by threat of bodily harm." K.S.A. 21-3426. The crime escalates to aggravated robbery if the perpetrator uses a dangerous weapon or "inflicts" bodily harm on a person in the course of the offense. K.S.A. 21-3427.

Second, neither crime requires the perpetrator to move the property to complete the offense. The courts invoke the hoary legal concept of asportation in explaining what is *not* required. See *State v. Kunellis*, 276 Kan. 461, Syl. ¶ 5, 78 P.3d 776 (2003); *Long*, 234 Kan. at 585 ("[T]he element of asportation is no longer required to complete the crimes of theft or robbery."). Thus, the crimes of theft and robbery are completed once the perpetrator exercises dominion or control over the property. The property need not be "carried away" or taken some measurable distance. *Long*, 234 Kan. at 585 ("[T]he crime of robbery is complete when the robber takes possession of the property. . . ."); *State v. Saylor*, 228 Kan. 498, 500-01, 618 P.2d 1166 (1980) ("[W]here a customer in a self-service store conceals on his person . . . property of the store and has the requisite specific criminal intent, that customer has committed a theft . . . .").

In some circumstances, a criminal who starts out intending to be a thief may become a robber. If the thief's effort to obtain

control of the property is immediately challenged or contested and he or she brandishes a weapon or resorts to the use of force to complete the taking, the crime becomes robbery or aggravated robbery. In differentiating theft and robbery, the Kansas Supreme Court has stated: "[W]e conclude a thief does not obtain the complete, independent and absolute possession and control of money or property adverse to the rights of the owner *where the taking is immediately resisted* by the owner before the thief can remove it from the premises or from the owner's presence." (Emphasis added.) *Long*, 234 Kan. at 586. And, as was the case in *Long*, when the thief uses force to complete the taking, he or she has then become a robber. *Aldershof*, 220 Kan. at 800 (For robbery, "the violence or intimidation must precede or be concomitant or contemporaneous with the taking."). Conversely, if the thief has already exercised dominion over the property and uses force to flee or otherwise avoid apprehension, he or she has not committed robbery. 220 Kan. 798, Syl. ¶ 3 ("Robbery is not committed where the thief has gained peaceable possession of the property and uses no violence except to resist arrest or to effect his escape.").

The facts of *Long* and *Aldershof* illustrate circumstances under which a thief may or may not become a robber. In *Aldershof*, the defendant was in a dimly lit Wichita club. He grabbed the purses of two female patrons and left the establishment. One of the women confronted the defendant outside the bar in the parking lot. He punched her in the face, got into a pickup truck, and drove off. The Supreme Court held that the facts demonstrated only a theft because the defendant had secured possession of the purses before the physical confrontation. 220 Kan. at 803-04. In *Long*, however, the defendant entered a dairy shop in which a rural Butler County couple sold milk on an honor system in which patrons could take the product and leave their payments in a locked money box. The wife came into the shop to restock the milk while the defendant was emptying the money box. She demanded to know what he was doing and then stood in the doorway. The defendant immediately bolted for the door, pushing the woman out of the way. The Supreme Court held those circumstances supported the defendant's conviction for robbery, especially given that the con-

frontation took place at "the precise moment he stuffed the money into his pockets." *Long*, 234 Kan. at 586.

The difference, of course, can have substantial implications for a criminal defendant. Here, for example, Plummer would have been guilty of misdemeanor theft based on the value of the property he took. See K.S.A. 21-3701(b)(5) (theft of property worth less than $1,000 is a class A nonperson misdemeanor). Instead, he was convicted of an aggravated robbery, a level 3 person felony. See K.S.A. 21-3427.

## IV.

The courts have recognized vexing factual issues may arise in determining if the crime is a theft or a form of robbery based on whether the taking of the property has been completed at the point a defendant uses force or the threat of force. *Long*, 234 Kan. at 583 ("No established set of guidelines exists which can be readily applied for a quick and easy answer to this question."); *Aldershof*, 220 Kan. at 803 ("This must of necessity be determined from the factual circumstances presented in the particular case before the court."). Again, the facts of *Long* and *Aldershof* demonstrate the nuance that may be at play. Those are precisely the kinds of determinations entrusted to jurors to sort out once they have been armed with proper instructions to guide them on the applicable law.

Based on the facts in this case, we believe reasonable jurors could find Plummer guilty of theft, though they might reach some other conclusion. Plummer spent about 2 hours in the Target store picking up merchandise. Some of his actions, as observed by store security personnel, were indicative of an intent to steal, rather than to purchase. Plummer commandeered Target property to facilitate the crime—the knife and backpack—and tampered with other property—he took the shaver out of its packaging. But the security personnel did not immediately challenge Plummer and instead waited until he had begun to leave the store, long after he had taken possession of much of the merchandise. As the Kansas Supreme Court noted in *Saylor*, 228 Kan. at 500-01, the crime of theft is completed once a store patron "conceals" merchandise "on

his person" with the intent to permanently deprive the owner of that property. The thief needn't leave or attempt to leave the store. Accordingly, the trial court erred in failing to charge the jury on theft, as a lesser degree of robbery, in conformity with Plummer's request. We, therefore, reverse and remand for a new trial.

We will address other points on appeal as they may be implicated in a retrial. Before turning to that task, we look briefly at the State's arguments against giving a lesser offense instruction. And we discuss Plummer's argument for alternative relief in the form of remand with a direction that a judgment of conviction be entered for attempted aggravated robbery.

The State cites *State v. Randle*, 32 Kan. App. 2d 291, 81 P.3d 1254, *rev. denied* 277 Kan. 927 (2004), as supporting the trial court's decision against instructing on theft. Although reaching the correct result on the facts, *Randle* applies a rationale not fully consistent with the treatment of theft and robbery enunciated in *Aldershof, Long,* and the authority they outline. In *Randle,* an employee of a vending machine company parked her work van outside a store she serviced. She opened the cargo doors and climbed partway into the back area of the van. In doing so, she exposed a canvas bag holding $400 in quarters. Randle came up to the open doors, grabbed the bag, and dashed toward his car that was no more than 7 feet away. The vending employee "immediately got out of her van, went over to the car and reached through the open driver's door, attempting to recover the money bag." 32 Kan. App. 2d at 293. Randle pushed the employee several times and then started the car. The employee hung on the car briefly and then let go. The employee got the tag number and immediately called 911. Randle was caught and charged with robbery. A jury convicted him. On appeal, he argued the facts supported a theft, not a robbery. The Court of Appeals rejected that argument and affirmed the conviction.

The *Randle* decision cites *Long*'s observation that a criminal does not obtain control of property if the owner immediately resists the taking before the property can be removed from the premises or the presence of the owner. 32 Kan. App. 2d at 294. And the decision points out that the vending employee instantly challenged

Randle and sought to avert the taking of the canvas bag. Because Randle then used force to complete the taking, he committed robbery rather than theft. That is sound both in its reasoning and result. The point is that the taking or possession of property remains incomplete if that criminal action is immediately contested.

But the decision goes on to say that the result is also supported because Randle applied force to the vending employee before he left the "premises" with the property. 32 Kan. App. 2d at 294. The court defined the premises as the parking lot of the store. The State seizes on that additional or alternative explanation in *Randle* to support its position here. In other words, because the Target employees accosted Plummer and he responded with force before he had left the second set of doors at the store entrance and (presumably) the parking lot, the taking of the merchandise had not been completed.

In essence, *Randle* seems to treat leaving the premises as an alternative or additional requirement for effecting a taking. By doing so, the decision discounts the temporal component that the taking be immediately contested, but such close proximity in time is a necessary condition for the crime of robbery. Indeed, it is a legally essential ingredient. *Aldershof*, 220 Kan. at 800. That aspect of *Randle* is demonstrably incorrect.

Moreover, that reasoning imposes a requirement that the perpetrator actually carry the property away from or off the "premises," however that may be defined, to complete the offense. But Kansas law categorically rejects asportation or movement of the property as a requirement for the completed crimes of theft and robbery. *Long*, 234 Kan. at 585. Applying *Randle* to do otherwise would lead to results generally considered anomalous. For example, if a team of bank robbers couldn't escape the bank before the police arrived and captured them, they would be guilty of an attempt rather than the completed crime, even though they had plainly taken possession of the money. Or suppose a sticky-fingered barfly picks a wallet from another patron's pocket and an hour or so later takes it out to pay the tab. The owner sees the wallet in strange hands and tries to get it back. The pickpocket shoves the owner away and runs out the door. Under Kansas law, that's a theft,

not a robbery. Similarly, had the Target employees reached Plummer after he went through the second set of doors and stood in the parking lot, *Randle* would support a robbery conviction. But that outcome would be irreconcilable with the result in *Aldersof*, where the physical confrontation actually took place in the bar parking lot. In short, the State's reliance on that aspect of *Randle* is legally unavailing.

Here, too, as we have noted, the Target employees did not immediately contest Plummer's taking of the store merchandise. They waited an extended period, well over an hour with respect to some items, before confronting Plummer. The State argues that the Target employees could not be sure of Plummer's intent until he walked past the registers and began to leave the store. Thus, according to the State, the theft had not been completed. The premise itself reflects a debatable proposition in this particular case given some of Plummer's actions, such as removing merchandise from its packaging, that look to be wholly inconsistent with an intent to purchase. The State's argument fares no better as a general proposition. The crime of theft is completed once the perpetrator takes the property with the specific intent to permanently deprive the owner. *Saylor*, 228 Kan. at 500-01. The requisite criminal intent often might be difficult to establish if potential shoplifters were confronted while still moving about the store, since they could argue that they would have paid for the items or returned them to the store shelves. Accordingly, loss prevention officers typically wait until a suspect has gone past the checkout lines to intercede, thereby establishing strong circumstantial evidence of the necessary bad intent. 228 Kan. at 501. But the crime actually would have been completed well before then; it simply would have been much harder to prove without the additional evidence that developed later. In other words, the crime of theft does not remain ongoing or incomplete merely because law enforcement or security personnel decline to make an immediate interdiction in hopes of securing additional evidence to strengthen a prosecution.

We, therefore, reject the State's argument that no theft instruction was necessary on the theory Plummer used force during the course of the theft, as opposed to after it had been completed,

making the crime a form of robbery as a matter of law. That determination requires an assessment of detailed factual circumstances and should be left for the jury.

Finally, the State invokes the "skip" rule to argue that the giving of a theft instruction was unnecessary because the jury declined to convict Plummer of the lesser offense of robbery on which it was instructed. But the argument proves too little. In broad terms, the skip rule suggests that if a jury convicts of an offense and, thus, rejects a lesser included offense on which it was instructed, then no error results from failing to instruct on an offense that is even lesser still. *State v. Horn*, 278 Kan. 24, 43, 91 P.3d 517 (2004). The rule is not really a rule at all in the sense that it must be invariably or even routinely applied, although the State certainly suggests otherwise. It is, rather, simply a logical deduction that may be drawn from jury verdicts in certain cases. If a jury convicts of a greater offense, having been given the opportunity to consider a lesser offense, and that verdict necessarily establishes a factual element that would be legally inconsistent with an even lower offense on which no instruction were given, the defendant cannot have suffered any prejudice from the failure to give that instruction.

Here, however, the skip rule offers no insight into how a jury would have considered a theft instruction. As noted earlier, the difference between aggravated robbery and simple robbery is the perpetrator's use of a dangerous weapon or infliction of bodily harm. There was no weapon involved here, but a jury could have found that Schwabuer suffered bodily harm in the confrontation with Plummer—he had scrapes and scratches. That says nothing about whether the jurors, properly informed on the law, might have concluded that Plummer completed a theft before the confrontation. The skip rule, therefore, sheds no light on whether Plummer incurred some actual prejudice by the failure to instruct on theft. The jury was given a forced choice between convicting Plummer of some form of robbery, on the one hand, and acquitting him, on the other. On the facts of this case, the choice was a legally deficient one.

As noted, the trial court ruled Plummer's taking of the property had not been completed at the time of the confrontation with the

store security officers and, therefore, no theft instruction was warranted. On the facts of this case, however, the issue was one for the jury. Plummer argues here that in light of the trial court's ruling, he could have been convicted only of attempted aggravated robbery rather than the completed offense. Plummer summarizes his argument this way: "Under the findings made by the trial court, and as a matter of law, this court must vacate the aggravated robbery conviction and enter a conviction for attempted aggravated robbery."

Plummer's position, of course, is premised on the legal correctness of that ruling below. And we presume the argument is also premised on the assumption that we would agree with the trial court on that point. The way Plummer has framed the request for remand for conviction of attempted aggravated robbery it need not and should not be addressed further given our determination that the issue on which the request has been based ought to be decided by a properly instructed jury. In short, we view Plummer's argument and the resulting relief as his less desired alternative to getting a new trial to remedy the error in failing to instruct the jury on theft.

## V.

On appeal, Plummer raises two other issues related to jury instructions. First, he requested a jury instruction delineating the difference between a theft, when the thief uses force to escape, and a robbery. In light of our ruling remanding for a new trial because the jury was not instructed on theft, we consider this related point. The pattern instructions for criminal cases do not address the distinction between theft and robbery based on when a perpetrator employs force or the threat of force.

The appellate courts recognize that in a given case, a trial judge may be required to use a nonstandard instruction. *State v. Dixon,* 289 Kan. 46, Syl. ¶ 10, 209 P.3d 675 (2009). The courts suggest that trial judges act cautiously in tinkering with existing instructions, given the expertise and deliberation that have gone into their development. Here, however, no standard instructions require modification. Instead, a supplemental instruction needs to be

crafted to explain the law governing whether criminal conduct amounts to theft or robbery in light of the perpetrator's threat or use of force relative to the taking of the property.

An instruction covering that law ought to be given, since the issue goes to the central point of Plummer's defense. And, as we have said, reasonable jurors might conclude Plummer committed theft rather than robbery. *State v. Anderson*, 287 Kan. 325, 334, 197 P.3d 409 (2008) (" 'A defendant is entitled to instruction on the law applicable to his or her theory of defense if there is evidence to support that theory.' "). Likewise, those legal considerations pertinent here cannot be considered a matter of common knowledge among jurors. *Dixon*, 289 Kan. at 68 ("A jury cannot be presumed to have legal knowledge outside the statements of law in the instructions."). We express no opinion on the adequacy of the instruction Plummer proposed to the district court during the trial. And we presume the parties working with the trial judge will be able to draft an instruction that competently informs a new jury of the necessary tenets.

On appeal, Plummer has suggested that the trial court should have instructed on attempted aggravated robbery. He did not request an instruction on that lesser offense at trial. We do not consider whether that failure was clearly erroneous, the standard for reversal when a party has failed to request an instruction and then argues for relief on appeal. *State v. Martinez*, 288 Kan. 443, 451, 204 P.3d 601 (2009). Because the case likely will be retried, we comment briefly on the issue should it arise during the new trial.

The State has argued that Plummer's taking of the merchandise was not complete at the point he was stopped by the Target employees. Thus, the argument goes, his use of force converted a theft in progress into a robbery. But consistent with that position, Plummer then never gained full dominion or control over the property, since the intervention of the store employees thwarted his efforts. That sounds much like an attempt, rather than a completed crime. K.S.A. 21-3301(a) ("An attempt is any overt act toward the perpetration of a crime done by a person who intends to commit such crime but . . . is prevented or intercepted in executing such crime.").

The State's rejoinder is an elusive argument that Plummer's unauthorized control of the store merchandise was incomplete for purposes of a theft yet somehow complete as a taking for an aggravated robbery, thereby negating any possibility of a verdict for attempted aggravated robbery. The Kansas courts have rejected that sort of abstraction and treat the contours of the taking required for robbery as uniform with the control required for theft. See *Long*, 234 Kan. at 585 (discussing the possessory elements of theft and robbery without drawing any material distinction between the two offenses in that respect). In light of the evidence presented at any retrial, the parties and the court should give close consideration to the propriety of instructing on attempted offenses.

Reversed and remanded with directions for a new trial.