NOT DESIGNATED FOR PUBLICATION

No. 126,424

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GABRIEL D. YANKEY JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; TYLER ROUSH, judge. Oral argument held November 12, 2024. Opinion filed August 8, 2025. Affirmed in part, reversed in part, sentence vacated, and case remanded with directions.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ATCHESON, P.J., CLINE and PICKERING, JJ.

ATCHESON, J.: Defendant Gabriel Yankey Jr. attempted a bank heist in Wichita that teetered between audacious and foolhardy. The endeavor wound up tilting more toward the second—Yankey was caught before he got any money. Yankey chose to represent himself leading up to and during a trial of the resulting criminal charges in Sedgwick County District Court. The jury convicted him of attempted theft and two counts of forgery. With the help of a lawyer on appeal, Yankey challenges the convictions and sentences on multiple grounds. We reverse one of the forgery

1

convictions for insufficient evidence and remand to the district court with directions to reconsider whether Yankey should receive credit against his sentences for the time he spent in jail awaiting trial. We otherwise affirm the convictions and resulting sentences.

FACTUAL AND PROCEDURAL HISTORY

Yankey walked into a branch of Commerce Bank in Wichita in August 2022 and handed a teller two documents. The first was a federal court form entitled Petition For Return Of Cash Bond that Yankey had filled out so it appeared to direct the clerk of the federal court to return $150,000 to him. The document had a signature block for him as petitioner, two blocks for a deputy clerk to swear to the content of the petition and to separately confirm the amount to be correct, and a block for a federal judge to approve the petition. All of the signatures on the petition were loopy and totally illegible, although they did not obviously look identical. The document was dated June 26, 2022, about six weeks before Yankey appeared at the bank.

The second document Yankey gave the teller was a handwritten note identifying himself as a federal agent and instructing the teller to put $150,000 in cash—described as 15 stacks of $10,000 each—in a bag he brought with him. The note directed the teller to act without calling attention to the transaction or making "any violent gestures" and stated Yankey—as a "US GOVT AGENT"—would leave a receipt. Yankey signed the note with his own name and included what appeared to be a social security number. The note contained no threats, and Yankey didn't behave in a threatening manner or display a weapon.

The teller was relatively new on the job and lacked authority to handle a transaction of that amount. She showed the documents to the branch manager. The teller was visibly upset and later said she was concerned for her safety. The papers flummoxed

the branch manager; he didn't know if the petition reflected a legitimate payment order or an attempt to rob the bank. Yankey assured the manager he was a federal agent.

By chance, a uniformed parole officer with the Kansas Department of Corrections was in the bank and recognized Yankey as a childhood acquaintance. The two spoke briefly. Their conversation prompted the parole officer to look at the documents and to talk with the teller. With his suspicions put on edge, the parole officer called the police. In the meantime, the branch manager asked Yankey for some form of identification. Yankey left the bank ostensibly to retrieve his identification. The parole officer convinced the branch manager to lock the door. As Yankey returned to the bank, a Wichita police officer arrived and arrested Yankey as he tried to explain that he was a federal agent.

In an amended information, the State charged Yankey with attempted robbery in violation of K.S.A. 21-5420 and two counts of forgery in violation of K.S.A. 21-5823(a)(1). The first forgery count alleged that Yankey did "make, alter or endorse" the petition so it appeared "to have been made, altered or endorsed, with the authority of one who did not give such authority." The second count alleged that Yankey did "issue or distribute" the petition "knowing it to have been thus altered" so it "purport[ed] to have been made at another time or with different provisions without the authority of the maker."

The jury heard evidence in the case in March 2023. As we have said, Yankey represented himself in the trial. State's witnesses included the bank employees, the parole officer, and the police officer who arrested Yankey. The State also called the division manager of the federal district court clerk's office; she testified the signature on the petition did not resemble that of any of the judges working in the Wichita federal courthouse.

The record suggests Yankey offered no conventional defense—he neither testified nor offered other affirmative evidence, and his cross-examination of the State's witnesses didn't seem to develop a theme for not guilty verdicts. In his opening statement and closing argument to the jury, Yankey described how he had filed a case in federal court about the loss of his constitutional rights and, therefore, effectively became his own court, allowing him to obtain money from a federally regulated bank. As is common, the district court instructed the jury that the opening and closing remarks of lawyers or self-represented parties are not evidence. See PIK Crim. 4th 50.070. If for no other reason, Yankey's eccentric theory did not amount to a defense the jury could consider.

The jury convicted Yankey of both forgery charges and of attempted theft as a lesser degree of the attempted robbery charge for trying to obtain or exert unauthorized control over the bank's money.[1] At a later hearing, the district court sentenced Yankey to serve 34 months in prison for the attempted theft conviction followed by postrelease supervision for 12 months, reflecting a guidelines punishment based on Yankey's criminal history. The district court imposed concurrent 9-month sentences on the forgery convictions to be served concurrent with the sentence for attempted theft. The district court determined Yankey spent 267 days in jail as a pretrial detainee but awarded him no credit against his controlling sentence for that time. Yankey has appealed.

[1] Because the statutory crimes of theft and robbery share a common-law ancestor—the offense of larceny—some forms of theft are considered lesser degrees of robbery. *State v. Plummer*, 45 Kan. App. 2d 700, 703-05, 251 P.3d 102 (2011), *aff'd* 295 Kan. 156, 283 P.3d 202 (2012). So in factually appropriate cases, a jury should be instructed to consider theft as a lesser offense of a robbery charge. K.S.A. 21-5109(b)(1), (b)(4). Typically, that would be true when the evidence of coercive force supporting the robbery charge is weak or the defendant uses force shortly after rather than contemporaneously with taking possession of the property. See K.S.A. 21-5420(a) (robbery includes taking property from person by force or by threat of bodily harm); *Plummer*, 45 Kan. App. 2d at 706.

On appeal, Yankey raises six points challenging various aspects of the guilty verdicts and also contends the district court erred in denying him jail-time credit that would shorten his imprisonment. We take up his contentions serially, adding additional facts as necessary.

*Sufficiency of Evidence of Attempted Theft*

Yankey contends the State presented insufficient evidence to support the lesser charge of attempted theft because the facts showed an incipient theft by deception rather than theft by obtaining or exerting unauthorized control. We are unpersuaded, especially given the appropriate standard of review. In assessing sufficiency of the evidence, an appellate court views the trial record in the best light for the prevailing party, here the State. The court gives that party the benefit of any conflicting evidence and draws all reasonable inferences from the evidence in their favor. The assessment precludes reweighing the evidence generally or making adverse credibility determinations specifically. *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021); *State v. Jenkins*, 308 Kan. 545, Syl. ¶ 1, 422 P.3d 72 (2018).

The theft statute criminalizes various forms of conduct that overlap to some degree and may not be easily distinguishable when applied to a given set of facts. A person violates K.S.A. 21-5801(a)(1)—the lesser charge against Yankey identified in the jury instructions—by obtaining or exerting unauthorized control over property of another. The linchpin of Yankey's plan lay in convincing the bank employees he was authorized to obtain $150,000 as a federal agent under the terms of the petition that a judge had signed. But he had no such authority; so had the bank complied, he would have gained unauthorized control of the money. The evidence supported the charge in the information and the jury's guilty verdict.

Yankey counters that K.S.A. 21-5801(a)(2) criminalizes obtaining control over property of another by deception, and because the petition conferred no actual authority on him, he sought to deceive the bank. And while that's broadly correct, the proposition affords Yankey no legal advantage. Here, the petition was a deceptive method of obtaining unauthorized control of $150,000. Yankey's actions were both deceptive and unauthorized, and his plan, therefore, likely violated both subsection (a)(1) and subsection (a)(2). Neither subsection required another distinct element distinguishing it from the other, and both carried the same penalties.

Accordingly, the district court properly instructed the jury to consider attempted theft by unauthorized control as a lesser offense of attempted robbery. The State requested the district court to use that form of theft—a choice reflecting an appropriate exercise of prosecutorial discretion under the circumstances of this case. See *State v. Broxton*, 311 Kan. 357, 363, 461 P.3d 54 (2020) (acknowledging broad scope of prosecutorial discretion). In short, the evidence supported the jury's guilty verdict for theft by unauthorized control violating K.S.A. 21-5801(a)(1). That the evidence presumably would have supported a conviction under subsection (a)(2) for theft by deception as well doesn't undermine the sufficiency of the verdict.

*Faulty Attempted Theft Instruction*

In a second challenge to his conviction for attempted theft, Yankey argues that the jury instruction omitted two elements of the crime, so the guilty verdict should be reversed. Although Yankey's premise is correct, his legal conclusion is not.

The district court failed to inform the jurors they had to find beyond a reasonable doubt that Yankey acted with the intent to commit a theft and that he failed to complete the crime. Each is an element of attempted theft. The elements instruction the district court used matched the one the State proposed. As a self-represented party, Yankey did

6

not recognize the problem and interposed no objection. Without an objection in the district court, we typically will reverse an instructional mistake only for clear error. *State v. Hillard*, 313 Kan. 830, Syl. ¶ 7, 491 P.3d 1223 (2021).

The United States Supreme Court has recognized that the failure to submit an element of a charged crime to the jurors for their consideration cuts to the heart of the adjudicatory process and deprives a criminal defendant of the fundamental right to a jury trial protected in the Sixth Amendment to the United States Constitution and applied to the states through the Fourteenth Amendment. *Neder v. United States*, 527 U.S. 1, 18, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (constitutional error to omit element of crime from jury's consideration); *Duncan v. Louisiana*, 391 U.S. 145, 147-48, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968) (recognizing incorporation of Sixth Amendment jury trial right through Due Process Clause). The Court determined that the error could be considered harmless only if the omitted element were "uncontested and supported by overwhelming evidence." *Neder*, 527 U.S. at 17. The Kansas Supreme Court has recognized and applied that test for harmlessness when an instruction omits an element of a charged crime. *State v. Richardson*, 290 Kan. 176, 182-83, 224 P.3d 553 (2010); *State v. Daniels*, 278 Kan. 53, 62-63, 91 P.3d 1147 (2004). The exceptionally rigorous *Neder* criteria preclude an appellate court from presuming or inferring how a given jury *might* have decided a contested element of the crime that had not been submitted to it—a decision precariously close to the constitutionally forbidden practice of judicially directing a finding on an element or directing a verdict. See *Sullivan v. Louisiana*, 508 U.S. 275, 277, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993); *Rose v. Clark*, 478 U.S. 570, 578, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986).

More recently, however, the court has rejected using the *Neder* test when a defendant has failed to object to a jury instruction omitting an element of the charged crime and has held the general test for clear error governs. *State v. Moore*, 319 Kan. 557, 570-71, 556 P.3d 466 (2024); *State v. Jarmon*, 308 Kan. 241, 244, 419 P.3d 591 (2018).

This reflects a specific application of the court's new rule that constitutional and nonconstitutional instructional errors will be reviewed the same way if the complaining party has failed to object in the district court. See *State v. Reynolds*, 319 Kan. 1, 18-19, 552 P.3d 1 (2024); *Jarmon*, 308 Kan. at 244. The usual clear error test and the *Neder* test impose almost diametrically opposite burdens. We necessarily follow *Moore* and *Jarmon*.[2]

[2] The *Jarmon* court sought to distinguish *Neder* because the defendant there had objected to the erroneous elements instruction and, therefore, reasoned the general clearly erroneous test should apply in the absence of an objection. 308 Kan. at 244. That is a factual distinction between *Neder*, on the one hand, and *Jarmon* and this case on the other. But it is hardly clear the objection was an outcome determinative circumstance in *Neder*. Nor is it obvious that clear error should be assessed using a unitary test when instructional mistakes are not equivalently prejudicial. Omitting an element of the charged crime from the jurors' consideration corrodes the fundamental purpose of a criminal trial. See *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970) ("[W]e explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."). The same cannot be said of failing to tell the jurors how to weigh expert witness testimony or to skeptically view an informant receiving a benefit. PIK Crim. 4th 51.170 (2020 Supp.) (expert witness); PIK Crim. 4th 51.100 (2020 Supp.) (informant testimony).

Moreover, the formulation of jury instructions is intended to be a collaborative process among the parties and the district court, although the ultimate responsibility for their content rests with the district court. *State v. Hargrove*, 48 Kan. App. 2d 522, 535, 293 P.3d 787 (2013); see K.S.A. 22-3414(3). Here, the State presented the defective elements instruction to the district court as part of that collaboration. As we have said, Yankey apparently didn't recognize the problem, so he lodged no objection. In this circumstance, a fair argument could be made that the principal cause of the error lay with the State and ought to be factored into a clear error analysis. See *Hargrove*, 48 Kan. App. 2d at 535-36; *United States v. Barrow*, 118 F.3d 482, 491 (6th Cir. 1997) (government bears some responsibility for defective instruction submitted jointly with defendant, mitigating invited error rule to permit appellate consideration of defendant's claim district court withdrew elements of charged crimes from jury's consideration).

For Yankey to prevail, we would have to be firmly convinced that a proper jury instruction would have resulted in a not guilty verdict on the attempted theft charge.

Given the omitted elements, we cannot come close to such a conclusion. The instruction correctly listed the elements of theft; it failed because it did not require the jury to find Yankey harbored the intent to commit a theft. But the evidence clearly established Yankey intended to commit a theft by gaining control of $150,000 of the bank's money through the unauthorized petition he presented to the teller. Getting the money was, rather obviously, the point of Yankey's endeavor. And, without belaboring that point, the evidence circumstantially established he intended to permanently deprive the bank of the money—nothing suggested Yankey merely sought to borrow the $150,000 for some limited period. *State v. Pepper*, 317 Kan. 770, 779, 539 P.3d 203 (2023) (circumstantial evidence alone sufficient to prove crime). Yankey presented no evidentiary counterweight. The other omitted element—specific to attempts—would have required the jurors to find that Yankey failed to obtain the $150,000. The failure was obvious from and undisputed in the trial testimony.

Even under the *Neder* test, Yankey's claim would be meritless. The trial evidence described—without contradiction—a scheme to have bank employees hand over $150,000 to Yankey as directed in the fabricated petition. If successful, the scheme would have been a theft. But the scheme unraveled when the bank employees sensed the petition might be illegitimate and held on to the bank's money. None of that was contested at trial, and the supporting evidence was unchallenged in any meaningful way.

*Insufficient Evidence of Forgery for Making, Altering, or Endorsing*

Yankey disputes the sufficiency of the evidence supporting the charge of forgery for making, altering, or endorsing a written instrument (the petition) with the intent to defraud and doing so in a way the instrument purports to have been made by another person without that person's authority. K.S.A. 21-5823(a)(1). The trial evidence established that the petition purported to have been signed by a federal judge, who necessarily would be a real person. The signature does not consist of a sequence of

9

identifiable letters forming a recognizable name. Rather, it looks like a couple of loops, one mostly above the signature line and other mostly below the line. Although that sort of hieroglyph could be a legitimate signature, the evidence established that none of the federal judges signed their name that way. So the evidence showed, albeit circumstantially, no federal judge authorized the petition. Yankey did not dispute those aspects of the State's case, and they sufficiently support the elements of the charged forgery.

Yankey tries to avert that conclusion with the suggestion that his signature on the petition, though illegible, looks very much like the equally illegible signature purportedly of the federal judge. The suggestion might have more force if both signatures were readable and plainly established the name of the signatory petitioner and the judge to be Gabriel D. Yankey. But doing so would have been akin to a neon sign proclaiming: "Beware! This is a ruse." Rather, Yankey affixed unreadable scrawls for all four signatures on the petition and in doing so created a writing that falsely appeared to have been approved and thus made by a federal judge.

Yankey then offers a backhanded argument on the sufficiency of the evidence—he asserts the evidence actually shows he made "a false information," conduct criminalized in K.S.A. 21-5824. So he could not be convicted of forgery. But the argument proves too little. Making a false information is a broadly defined crime that, pertinent here, proscribes "making . . . any written instrument . . . with knowledge that [the instrument] falsely states or represents some material matter . . . and with intent to defraud [or] obstruct the detection of a theft." K.S.A. 21-5824(a).[3]

[3] In full, K.S.A. 21-5824(a) states:

"Making false information is making, generating, distributing or drawing, or causing to be made, generated, distributed or drawn, any written instrument, electronic data or entry in a book of account with knowledge that

10

such information falsely states or represents some material matter or is not what it purports to be, and with intent to defraud, obstruct the detection of a theft or felony offense or induce official action."

The two crimes are closely related, especially given the linkage that a false information includes a writing used to cover up a theft. Some acts would be criminalized under both statutes, but they are not identical in scope. Here, for example, the petition served as both a means of carrying out a theft and a device for avoiding at least immediate detection of that crime. The document falsely represented that a federal judge had approved the release of $150,000 to Yankey. Likewise, had the bank employees given Yankey $150,000 relying on the petition, they would not have known he stole the money until they learned no judge signed the document. By then, Yankey would have made his getaway, presumably to a place far from Wichita. Those circumstances would seem to support a charge of and conviction for making a false information.

But when a defendant's conduct violates more than one criminal statute, the State may elect which crime to charge. See *State v. Euler*, 314 Kan. 391, 397, 499 P.3d 448 (2021); *State v. Stohs*, 63 Kan. App. 2d 500, 537, 531 P.3d 533 (2023) (discussing *Euler*). As we have indicated, the choice reflects the essence of prosecutorial discretion. Yankey has not shown his forgery conviction was insufficiently supported in the evidence or otherwise impermissible.

*Insufficient Evidence of Forgery for Issuing an Altered Instrument*

Yankey correctly contends the State failed to prove the second forgery count. We need to add some procedural history to explain the basis for the outcome.

In the amended information, the State charged Yankey with issuing or distributing a document he knew to be "altered" so it appeared "to have been made at another time or

11

with different provisions." That is, the alleged crime required someone to have changed the terms of an original, legitimate petition without the authority to do so and then for Yankey to have presented the altered petition to the bank knowing of the illicit changes in an attempt to obtain $150,000. And the allegation, if proved, would be a crime under K.S.A. 21-5823(a)(2) (distributing document forged in violation of subsection [a][1] constitutes distinct criminal violation).

In instructing the jury on this count, the district court expanded the elements charged in the information to include issuing or distributing the petition knowing it to have been "made" or "endorsed" in addition to being "altered." A district court cannot instruct a jury to consider elements of a particular crime that have not been charged in the complaint or information. *State v. Phillips*, 312 Kan. 643, 668-69, 479 P.3d 176 (2021); *State v. McClelland*, 301 Kan. 815, Syl. ¶¶ 4-5, 829, 347 P.3d 211 (2015) ("Generally, if an instruction adds alternate statutory elements of a crime that were not included in the complaint or information, the instruction is overly broad and, thus, erroneous."). The rule is bound up in giving criminal defendants fair notice of the charges against them, so they may frame their defenses without being ambushed at trial with materially different accusations. 301 Kan. at 828.

The instruction the district court used was legally inappropriate because it broadened the elements of the forgery as charged in the information. But Yankey did not object to the improper instruction. We, therefore, also review this mistake for clear error. *State v. Hart*, 297 Kan. 494, 508, 301 P.3d 1279 (2013). On this point, we are firmly convinced the jury would have reached a different verdict had the district court correctly confined the elements of this forgery count to altering the terms of a written instrument.

We measure the trial evidence against the elements of the crime, as charged in the information, meaning the State had to prove someone "altered" the petition and Yankey presented it to the bank. The common meaning of "alter" governs. See *State v. Moeller*,

12

318 Kan. 860, 877, 549 P.3d 1106 (2024). And "alter" is defined as "to make different in details but not in substance; modify." Webster's New World College Dictionary 42 (5th ed. 2018). To support the charge, the State would have to prove Yankey presented the bank with a genuine petition that had been changed in some way—as by showing he, rather than someone else, was the petitioner. The State presented no such evidence.

A person commits a textbook example of forgery if they alter a check a payor has prepared and signed to increase the amount payable or to change the name of the payee and do so with fraudulent purpose. 36 Am. Jur. 2d, Forgery § 20 ("If an instrument is so altered that it is not the instrument signed by the maker, or if words are added to change the effect of the instrument, and if this is fraudulently and falsely done, it is forgery."). Conversely, a person would "make," rather than "alter" a forged document by filling out a blank check without the account holder's permission. A common meaning of "make" is to "create" or "compose." Webster's New World College Dictionary 881 (5th ed. 2018); see Black's Law Dictionary 1141 (12th ed. 2024) ("make" defined as: "To cause [something] to exist").

On appeal, the State argues that Yankey altered a document because he obtained a petition form and then filled in spaces for a case caption, the name of the petitioner, the date, and an amount and then signed for himself and falsely for a court clerk and a judge. But filling out a template constitutes making a forged instrument rather than altering a legitimate one. And a template for the petition is available on the website for the United States District Court for the District of Kansas. The State's argument collapses the difference between "making" and "altering" an instrument.

Because the evidence at trial did not establish Yankey altered the petition, we are obligated to reverse the guilty verdict on that count, order a judgment of acquittal, and vacate the sentence for that conviction. See *State v. Baumgarner*, 59 Kan. App. 2d 330, 331, 481 P.3d 170 (2021).

*Failure to Give Limiting Instruction on Yankey's Clothing at Trial*

On appeal, Yankey contends the district court erred in not instructing the jurors to disregard his appearance during trial in a distinctive jail uniform and the error requires reversing all of the guilty verdicts. We disagree. Again, some procedural background is in order.

As we said, Yankey represented himself before and during the trial. At a pretrial conference, the district court raised the issue of civilian clothing for Yankey during the jury trial. Yankey initially demurred but later provided his clothing sizes, and the district court obtained civilian attire for him. The morning of trial, Yankey told the district court the pants were too small. The district court secured another pair that Yankey didn't bother to try on. He then told the district court, "I'm just going to wear these[,]" referring to the orange jumpsuit pretrial detainees wear in the jail. Yankey has not challenged his appearance during the trial in the jail uniform. See *Estelle v. Williams*, 425 U.S. 501, 512-13, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1977) (criminal defendants have well-established constitutional right not to be *compelled* to appear in distinctive jail clothing during jury trials).

Rather, Yankey now argues the district court should have affirmatively instructed the jurors not to consider how he was dressed in arriving at their verdicts. During the trial, Yankey did not ask for that sort of limiting instruction to the jury, and the district court did not offer to give one. The issue thus framed replicates one this panel has considered in another appeal involving Yankey. *State v. Yankey* (No. 126,423, this day decided), slip op. at 13-17 (unpublished opinion). Given the parallel contention and analysis, we borrow from that opinion:

"We assume the usual framework for assessing claimed instructional error applies. An appellate court considers: (1) preservation of the issue in the district court; (2) the legal

14

appropriateness of the instruction; (3) the factual basis for giving the instruction; and (4) whether any error may be considered harmless under the circumstances. *State v. Barnes*, 320 Kan. 147, 172-73, 563 P.3d 1255 (2025).

"Yankey did not ask for a limiting instruction about his appearance in a jail uniform, so the issue was not preserved in the district court. But we may review an unpreserved claim of instructional error, and we will grant relief if the district court's failure to give an appropriate instruction was clearly erroneous. *State v. Willis*, 319 Kan. 663, 671, 557 P.3d 424 (2024). A limiting instruction would have been legally appropriate since Yankey's attire was not something the jurors should have considered in their deliberations. And it obviously would have been factually supported.

"We suppose the district court's failure to give a limiting instruction amounted to error. But that's not necessarily obvious. A party disadvantaged by something during a trial might not want the district court to instruct the jurors about it because an instruction would highlight the matter. See *State v. Rinck*, 256 Kan. 848, 853, 888 P.2d 845 (1995); *State v. Smith*, No. 125,463, 2024 WL 2552537, at *3 (Kan. App. 2024) (unpublished opinion); *State v. Perales*, No. 119,815, 2019 WL 5089857, at *13 (Kan. App. 2015) (unpublished opinion) (Atcheson, J. concurring) ('Often, good trial strategy suggests forgoing a limiting instruction that necessarily calls attention to the evidence in preference for the camouflage of silence.'). Here, of course, Yankey's presence throughout the trial in a jail uniform wouldn't have escaped notice. Still, finer trial tacticians than we might perceive sound reasons to decline an instruction in this uncommon situation.

"The better practice would have been for the district court to ask Yankey on the record if he wanted a limiting instruction and what it might say. See K.S.A. 60-406 (district court 'upon request shall restrict the evidence to its proper scope and instruct the jury accordingly'). The *Ward* court recognized that a district court should 'consider giving' a limiting instruction if a defendant or witness appears during the trial in a jail uniform, while acknowledging an instruction 'may not be advisable' in some cases. [*State v. Ward*, 292 Kan. 541, 576, 256 P.3d 801 (2011)]; see *State v. Jilka*, No. 115,274, 2017 WL 1367052, at *7-8 (Kan. App. 2017) (unpublished opinion) (Atcheson, J., concurring)

15

(district court should ask criminal defendant if they want otherwise proper limiting instruction).

"On appeal, Yankey has not favored us with the language he believes should have been included in a limiting instruction. A sufficient instruction might be as simple as telling the jurors: 'You must not draw any inferences from the way the defendant was dressed during the trial, and you should not consider his clothing in arriving at your verdict.' That borrows directly from PIK Crim. 4th 51.080 (2022 Supp.), the instruction used when a criminal defendant does not testify. Other (and perhaps better) language could be crafted.

"In applying the clearly erroneous test, an appellate court asks whether it is firmly convinced the verdict would have been different had the instructional error not occurred, taking full account of the trial evidence. *State v. Reynolds*, 319 Kan. 1, 18, 552 P.3d 1 (2024). The same criterion for reversible error applies when the mistake implicates a defendant's constitutional rights, as it does here. 319 Kan. at 18-19 (citing *State v. Jarmon*, 308 Kan. 241, 244, 419 P.3d 591 [2018]). We now turn to that task and look at the trial evidence." *Yankey*, No. 126,423, slip op. at 13-15.

The evidence against Yankey on the attempted theft charge and the forgery charge for making a false writing was strong. Yankey presented the completed form at the bank branch, represented himself as a federal agent, and requested $150,000 in cash. Along with the petition, he gave the teller a handwritten note advising her to avoid "violent gestures" or other conduct likely to attract attention. Especially in hindsight, the purported transaction is rife with red flags. More to the point, Yankey offered neither a plausible defense nor evidence at trial. Rather, in his opening and closing comments to the jurors, he simply outlined a bizarre legal theory. Those rather glaring deficiencies in the defense would have been no less glaring had Yankey been wearing a suit and tie.

Moreover, in its final instruction, the district court advised the jurors that their "verdict must be founded entirely upon the evidence admitted and the law as given in these instructions." See PIK Crim. 4th 68.010. As we pointed out in *Yankey*, the

16

instruction implicitly guides the jurors away from considering Yankey's appearance in a jail uniform since his clothing was not a matter of admitted evidence nor of the governing law. No. 126,423, slip op. at 16. And we presume jurors adhere to the instructions the district court gives. *State v. Gonzalez,* 307 Kan. 575, 595, 412 P.3d 968 (2018). In short, we are firmly convinced the jurors would have reached the same verdicts had the district court expressly told them to disregard Yankey's appearance in a jail uniform.

*Cumulative Error*

Yankey argues that cumulative error in the district court deprived him of a fair trial. See *State v. Harris*, 310 Kan. 1026, 1041, 453 P.3d 1172 (2019) (if multiple trial errors collectively render trial unfair, appellate court may reverse resulting convictions). But we do not have multiple errors that may be considered for that purpose.

Properly limiting the second forgery count to altering a written instrument and reversing that conviction for insufficient evidence did not adversely affect the fairness of the trial itself. All of the State's evidence was otherwise admissible on the attempted robbery charge and the other forgery charge.

The remaining errors consisted of the defective elements instruction on attempted theft and possibly the district court's failure to give a limiting instruction on Yankey's appearance in a jail uniform. But he did not object to either, so they are unpreserved instructional errors. The Kansas Supreme Court has recently determined those errors cannot be considered in assessing a cumulative error argument. *State v. Waldschmidt*, 318 Kan. 633, Syl. ¶ 9, 546 P.3d 716 (2024). Accordingly, this point fails.

17

*Jail-Time Credit*

On appeal, Yankey disputes the district court's failure to award him credit against the controlling 34-month prison sentence in this case for the time he spent in jail awaiting trial. The district court sentenced Yankey in May 2023. About six months later, the Kansas Supreme Court substantially revamped how jail-time credit should be determined under K.S.A. 21-6615(a) in a way benefiting criminal defendants. *State v. Hopkins*, 317 Kan. 652, Syl., 537 P.3d 845 (2023). The court recently elaborated on how *Hopkins* should be applied, particularly when a defendant receives consecutive sentences in multiple cases. *State v. Ervin*, 320 Kan. 287, Syl. ¶ 12, 566 P.3d 481 (2025). Between *Hopkins* and *Ervin*, the Legislature materially amended K.S.A. 21-6615.

Because much has changed since the district court denied Yankey jail-time credit, we remand to the district court to reconsider what credit, if any, Yankey should receive in this case. We leave it to the district court's discretion whether to invite briefing and argument from the parties on the issue. But the district court should make findings and conclusions explaining its decision upon further review of the issue in light of the changed legal landscape.

Affirmed in part, reversed in part, sentence vacated, and case remanded with directions.

\* \* \*

PICKERING, J., concurring:  I concur and agree with the majority's opinion that all but one forgery conviction should be affirmed. Respectfully, I disagree with the majority's discussion regarding the district court's failure to provide an instruction admonishing the jury that it should not consider Yankey's jail clothing or his incarceration. Instead, as discussed more fully in the dissenting opinion in *State v. Yankey*

18

(No. 126,423, this day decided), slip op. at 22-23 (unpublished opinion), I would follow *State v. Ward*, 292 Kan. 541, Syl. ¶ 7, 256 P.3d 801 (2011), in which the court stated:

> "A trial court almost always abuses its discretion to control the courtroom when it allows a defendant, witness, or nonwitness to be brought before a jury in jail clothing without an articulated justification explaining why it is necessary for the individual to wear jail clothing and does not consider giving an admonition or instruction to the jury that the jurors should not consider the clothing or the individual's incarceration."

I read *Ward* to place the onus of giving an admonition or instruction on the district court unless the defendant requests otherwise. I do not read *Ward* to require a curative instruction only if the defendant requests one. As such, I disagree with the majority's clear error analysis based on Yankey's failure to object to the district court's failure to include an admonishing jury instruction. Slip op. at 14-16. Nonetheless, given the weight of evidence against Yankey in this case, the district court's failure to provide a curative instruction is harmless. Yankey's convictions but for one forgery conviction should stand.

19